**KANSAS CITY TERMINAL RAILWAY COMPANY, Plaintiff-Respondent,**

v.

**The INDUSTRIAL COMMISSION of the State of Missouri, the Department of Labor and Industrial Relations, Don L. Cummings, Director, Division of Industrial Inspection, William J. Delahunty, Assistant Director, Division of Industrial Inspection, and Thomas F. Eagleton, Attorney General of the State of Missouri, Defendants-Appellants.**

No. 51322.

Supreme Court of Missouri,
Division No. 2.

Dec. 13, 1965.

Sam D. Parker, W. M. Stapleton, Kansas City, Harold L. Harvey, Gilbert A. Schuessler, Paul R. Moody, St. Louis, Forrest P. Carson, Jefferson City, for respondent.

Norman H. Anderson, Atty. Gen., Louis C. Defeo, Jr., Asst. Atty. Gen., Jefferson City, for appellants.

FINCH, Judge.

This appeal involves a declaratory judgment action by plaintiff on its own behalf and as representative of a class, seeking to have Chapter 291 [1] declared inapplicable to railroads, or, in the alternative, that the provisions of that chapter were repealed by implication by the enactment of the Public Service Commission Law in 1913. The trial court sustained plaintiff's motion for summary judgment, holding that the suit was maintainable as a class action, that Chapter 291 was inapplicable to plaintiff and other railroads similarly situated as a class, and that defendants should be enjoined from inspecting railroads or charging them an inspection fee. Defendants appealed. We have jurisdiction on the basis of the fact that state officers are parties and the constitutionality of statutes is in issue.

The facts as established by the pleadings and evidence offered on the motion for summary judgment are as follows: Plaintiff is a Missouri railroad corporation. The Director of Industrial Inspection of Missouri, one of the defendants, through his agents, inspected plaintiff's premises at the Union Station in Kansas City, Missouri. The Director then ordered plaintiff to pay the fee for such inspection prescribed by § 291.130 in the amount of $39.00. The premises of plaintiff which were inspected consisted of portions of the offices, the sub-basement facilities, and the docks and platforms at Union Station in Kansas City. Plaintiff refused to pay the inspection charge on the basis that said Director did not have jurisdiction to make the inspection in question. The Director continued to demand payment, citing an opinion of the Attorney General, expressed an intention to continue the inspection of railroad property in Missouri, and stated that refusal to pay the inspection fee constituted a misdemeanor. The filing of this suit followed.

An affidavit of the Secretary of the Public Service Commission of Missouri, filed in connection with the motion for summary judgment, recited that the Commission has issued General Orders 3, 24 and 40, which pertained to railroads, and that inspections are made by the Public Service Commission pursuant thereto or to insure compliance therewith. Copies of said General Orders were attached to the Secretary's affidavit and submitted to the court. The affidavit indicated that the Commission inspects shops, stations, docks, freight yards, engines, cars, and other physical properties and equipment of the railroads. In addition, reports of accidents are investigated. An affidavit of the Director of Industrial Inspection for Missouri, offered by defendants, stated that existing records of the Division dating back to 1941 show that railroads have been inspected by the Division continuously since that time. It stated further that the Division continued to inspect railroads after institution of this suit by plaintiff, and that members of the

1. All references are to RSMo 1959, V.A.M.S., unless otherwise indicated.

class purportedly represented by plaintiff have consented to these continuing inspections and have paid the prescribed inspection fees.

◼ The first point urged by defendants is that the trial court erred in holding that this suit was maintainable as a class action. This point is well taken. Civil Rule 52.08, V.A.M.R., permits a class action where the persons constituting the class are very numerous or it is impracticable to bring them all before the court and the right sought to be asserted is joint, common, or several, with a common question of law or fact. It is required further by Civil Rule 52.09, V.A.M.R., that the petition allege facts showing that plaintiff or plaintiffs have been fairly chosen and adequately and fairly represent the whole class. The rule specifically requires that these allegations must be proved. This requirement is for the reason that judgment in a class action determines rights of persons not before the court. The rule is well stated in Hribernik v. Reorganized School District R–3, Mo.App., 276 S.W.2d 596, 599, as follows:

" * * * Our duty is to protect absent parties in suits of this sort. Plaintiffs do not even undertake to allege or to prove facts showing that they were 'fairly chosen,' or chosen at all, and that they 'adequately and fairly represent the whole class.' How they were chosen, if indeed they were chosen, or why they might adequately and fairly represent the class is left for us to ponder. The requirements of the supreme court rule cannot be regarded as merely technical or directory. They are mandatory. Campbell v. Webb, 363 Mo. 1192, 1199, 258 S.W.2d 595, 599. They reveal the court's solicitude for the constitutionality of Section 507.070 by requiring that the elements of due process be accorded to all absent persons whom others who sue would bind as a class. Doubtless the rule was formulated and adopted to achieve consistency with the philosophy announced in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741, which demonstrates that Art. XIV, U.S. Constitution, forbids suitors to bind members of a class unless it is made apparent by the procedure followed that they fairly and adequately represent that class." See, also, Sheets v. Thomann, Mo.App., 336 S.W.2d 701, and City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546.

◼ In this case plaintiff's petition contained the following allegations with respect to the maintenance of this suit as a class action:

"4. Plaintiff and all other railroad corporations within the purview of Public Service Commission Law mentioned above constitute a class having joint, common, or several rights with a common question of law or fact, involved in the justiciable issue here in question; and, said class being too numerous and otherwise impracticable to bring all individually before the Court herein, plaintiff is such one of said class as will fairly insure adequate representation of all in said respects. Plaintiff, accordingly, sues, respectively, in its individual capacity, and in the above-mentioned capacity of class-representative."

No proof was offered by plaintiff to show that it was impracticable to bring in all twenty-four (the number shown to be subject to PSC General Orders 3, 24 and 40) of the railroads. In addition, the petition did not allege that plaintiff was fairly chosen to represent the class, and there was no evidence of any kind on the subject. Unless we resort to mere conjecture, we can conclude only that plaintiff was a self-appointed representative. Furthermore, there is nothing in this record to show any desire on the part of other railroads to be free of the inspection by the defendants and hence nothing to show a common interest or claim between them and plaintiff. The only evidence before us pertaining to the existence or nonexistence of a joint or common right or one involving a common question of law or fact was the affidavit offered by the defendants to the effect

that other railroads in Missouri have continued to be inspected and to pay the inspection fees involved. This is indicative of the absence of a common interest between the railroads. Under such circumstances, we hold there was not a sufficient showing to permit the maintenance of a class action, and the judgment of the trial court should have been limited to a determination of the rights of plaintiff individually rather than as a representative of a class.

The next proposition urged by defendants is that the trial court erred in its holding that Chapter 291 did not apply to plaintiff and other railroads. Plaintiff's petition had asserted (1) that § 291.060 by its terms was inapplicable to railroads (or if intended to be applicable, and so construed, it would be unconstitutional as violative of Article III, § 23 of the 1945 Missouri Constitution), and (2) that whatever applicability the statute had to railroads had been repealed by implication by the enactment in 1913 of the Public Service Commission Law. The finding and judgment of the trial court recites simply that Chapter 291 is inapplicable to plaintiff and other railroad corporations. No reason is assigned, but we presume from the wording of the judgment that the finding was on the basis that the act by its terms was inapplicable—not that the statute had been repealed by implication.

Plaintiff's petition sought relief from Chapter 291 generally, and the court's judgment holds that Chapter 291 is inapplicable, but actually the section under which defendant Director made his inspection, and for which a fee was charged, is § 291.060, and this is the section which is analyzed and discussed by plaintiff. Plaintiff's brief recognizes that whether he has the right to make such inspection involves only this section. The title and legislative history of other sections in Chapter 291 are not discussed or briefed. The real question for decision, therefore, is whether § 291.060 authorized defendants to inspect plaintiff's facilities.

In 1901 the General Assembly enacted a statute the title of which read, "An Act to provide for the appointment of a factory inspector and defining his term of service, salary, powers and duties." (1901 Session Laws, p. 197.) This is the statute which, with some later amendments, became what is now § 291.060.

This statute was amended in 1903, 1907 and 1919. The titles of the amending statutes were as follows:

"An Act to amend section 2 on page 197 of the session acts of 1901, entitled 'Labor factory inspector;' so as to make said act apply only to cities having a population of thirty thousand inhabitants and over." (1903 Session Laws, p. 218.)

"An Act to amend section 1 of an act to provide for the appointment of a factory inspector, and defining his term of service, salary, powers and duties, approved April 17, 1901; and to repeal section 2, as amended and approved March 27, 1903; and also to repeal sections 3, 4 and 5 of said act, so approved April 17, 1901, and to enact four new sections in lieu thereof, to be known as sections 2, 3, 4 and 5." (1907 Session Laws, p. 326.)

"An Act to amend section 7823, of article 5, chapter 67, Revised Statutes of Missouri, 1909, concerning the state factory inspector, his appointment, term of office, oath and bond, by striking out certain words and inserting others in lieu thereof, and to repeal sections 7824, 7825 and 7826 of said article 5, chapter 67, Revised Statutes of Missouri, 1909, relating to the state factory inspector, his powers, duties, office, salary and the location of his office and enacting new sections in lieu thereof relating to the same subject matter, to be numbered sections 7824, 7825, and 7826." (1919 Session Laws, p. 452.)

It was and is the contention of plaintiff that the title to the above act, both as originally enacted and as amended, had no application to plaintiff or other railroad

companies and their operations. Plaintiff cites and relies upon the case of Williams v. Atchison, Topeka & Santa Fe Ry. Co., 233 Mo. 666, 136 S.W. 304, upon the question of whether the title of the act here involved was broad enough to and was intended to apply to railroads. The Williams case involved a suit for recovery for death of a switchman from injuries received while in the employ of the railroad. Plaintiff alleged negligence on the ground that the railroad unloading platform was constructed in violation of the Missouri statute which prescribed safety measures for railroad yards, switches, roundhouses, switch offices, freight offices and passenger depots. (§ 7844, RSMo 1909.) The title of that act read: "An Act relating to manufacturing, mechanical, mercantile and other establishments and places, and the employment, safety, health and work hours of employes." This court upheld the contention that the statute was unconstitutional insofar as its terms applied to railroads, saying, l.c. 306: " * * * no one reading the title to the original act would for a moment think or even imagine that railroads, or railroad properties, or railroad employés were being considered or legislated upon in the act." The opinion refers to a legislative history in Missouri of treating railroads, their property and employees as separate legislative subjects, rather than being included with manufacturing, mechanical or mercantile establishments. Consequently, the court held, the terms "manufacturing, mechanical, and mercantile establishments" did not refer to or include railroads.

Defendants seek to distinguish the predecessor act of § 291.060 from the act involved in the Williams case by saying that the title of the latter was made applicable to types of establishments, whereas the title of the former is applicable to an office established, viz., the state factory inspector, his powers and duties, and that everything in the act and subsequent amendments relate to that office. The fallacy in that argument is that it overlooks the fact that the office created is a *factory* inspector and the subject of the title was "factory inspector." The descriptive term *factory* identifies and limits the office created, just as did the terms "manufacturing, mechanical and mercantile" with respect to the establishments referred to in the title of the act involved in the Williams case. We see no reason to depart from the ruling in the Williams case. We do not believe that anyone would believe that the title "factory inspector" was intended to or had any application to railroad operations. At that time there was a statute, enacted in 1891 (1891 Session Laws, p. 179, at 181), which defined "factory" as " * * * any premises where steam, water or other mechanical power is used in aid of any manufacturing process there carried on." This definition does not suggest that a factory inspector would have anything to do with railroads.

Defendants, in their brief and oral argument, concede that a railroad is not a factory, but contend that there are certain operations by the railroads specifically mentioned in the body of § 291.060 which defendants do have the right to inspect. Originally, the statute, as enacted in 1901, simply called for inspection of "all factories," but in the amendment of 1907, and again in the amendment of 1919, certain additional establishments were enumerated in the body of the act, even though not referred to in the title. Presently, said section refers to "all factories, warehouses, office buildings, freight depots, machine shops, garages, laundries, tenement workshops, bakeshops, restaurants, bowling alleys, pool halls, theaters, concert halls, moving picture houses, or places of public amusement, and all other manufacturing, mechanical and mercantile establishments and workshops." Defendants seize upon the terms "warehouses, office buildings, freight depots, machine shops" and contend that these provisions give defendants the right to make the inspections which they did make at Kansas City. They overlook the fact that the title of the act—the subject matter—was not changed in any of these amendments.

We are not called upon to and do not determine the validity of the inclusion of all of these numerated establishments by the various amendments. We hold simply that the title was not broad enough to be applicable to railroad operations. Nor do we think the Legislature intended to or did by the various amendments separate out certain segments of the railroad operation, as, for example, freight depots or the office facilities incident to the railroad operation, and subject them to the inspections by the factory inspector. We do not mean to hold that under any and every circumstance the mere ownership of property by a railroad corporation would cause § 291.060 to be inapplicable. For example, if a railroad company purchased the stock of a manufacturing corporation, which it then owned and operated as an investment, and not as a part of the regular overall railroad operation, the manufacturing company, otherwise subject to § 291.060, would not be relieved therefrom by the change in ownership of its corporate stock, but we do hold that the operation of the various incidental phases of the railroad operation (this includes the facilities of plaintiff which were inspected at Kansas City) are not subject to the terms of § 291.060.

In view of this conclusion, we do not reach for decision the point asserted by plaintiff that the act of 1901, as amended, dealing with factory inspectors, insofar as applicable to railroads, was repealed by implication by the enactment of the Public Service Commission Law in 1913. However, we have this observation with reference thereto. Repeals by implication are not favored. For such a result to be reached, the court must be convinced that the two statutes are so repugnant that both cannot stand, and therefore the Legislature necessarily intended repeal, even though they did not expressly so provide. In this instance, if both statutes were applicable, we would have duplicate inspection by different agencies of the state. Such duplication may be unnecessary or even undesirable, but the likelihood that the duplicate inspections are to repugnant as to result in implied repeal of the first statute is at least doubtful.

Finally, defendants assert that the judgment of the trial court was too broad and beyond the scope of the pleadings and issues in that it did not limit the injunction to authority asserted under Chapter 291. In view of the fact that this case must be remanded to permit entry of a judgment on behalf of plaintiff alone, and not with respect to railroads similarly situated as a class, the judgment should be so framed as to hold that § 291.060 does not apply to plaintiff, and to enjoin defendants from making inspections of plaintiff's railroad facilities thereunder, and from assessing inspection fees against plaintiff pursuant to § 291.130 for inspections made under § 291.060. Accordingly, the judgment herein is reversed and the cause remanded with directions to enter a judgment in favor of plaintiff in accordance with the views expressed in this opinion.

All of the Judges concur.